***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award.
 **********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated. There is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between the plaintiff and the defendant, General Electric.
5. The defendant is a duly qualified self-insured, with Electric Insurance/Sedgwick CMS as the servicing agent.
6. Plaintiff's average weekly wage was $874.80 on the date of the alleged injury, subject to verification pursuant to defendant filing a Form 22.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Industrial Commission Forms
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 9, 2005, plaintiff, then 36 years old, worked on the paint line for General Electric, where he had been employed on and off for about ten years. In his paint line position, plaintiff set the controls for the automatic paint dispensers, ensured that the guns sprayed appropriately, and transferred various parts to the assembly area to be painted which *Page 3 
required him to lift certain items or attach the heavier items to be lifted by a motorized crane. Plaintiff also hung items using a hand jack and rolled the barrels of dry paint on a hand truck to refill the paint dispensers.
2. Plaintiff had been employed previously by General Electric and had been laid off during a general reduction of force.
3. Plaintiff has his high school equivalency and a work history that includes restaurant work, landscaping, carpet cleaning, assembly line work and pipe fitting.
4. At 1:10 p.m. on February 9, 2005, plaintiff felt a pop in his back when he was pushing a cart of sheet metal that had become stuck in a rut in the floor. Plaintiff reported the incident to the occupational health nurse who told plaintiff he could leave work early. Instead, plaintiff opted to complete his shift that day and continued working until 3:00 p.m.
5. The next day, plaintiff presented to the physician's assistant at Burlington Family Practice who assessed a back strain and restricted him from working for one week.
6. On February 21, 2005, plaintiff was evaluated by Dr. Charles Goodno, an occupational medicine physician who provides medical care for General Electric employees. Dr. Goodno continued to restrict plaintiff from working, recommended physical therapy, and prescribed additional medications.
7. Plaintiff returned to Dr. Goodno on February 28, 2005. By then, plaintiff's radicular symptoms had improved. Plaintiff was released to a gradual return to work.
8. Plaintiff returned to part-time light duty work on March 2, 2005. While on light duty, he worked in the BUS department working on a drill and tap machine. The BUS position was a sit down job, but plaintiff was able to stand up and stretch as needed. *Page 4 
9. On March 16, 2005, plaintiff underwent an MRI of the lumbar spine which the reporting radiologist interpreted as showing no evidence of disc herniations, protrusions or bulges within the lumbar spine. As described below, two orthopeadic spine surgeons who later examined plaintiff interpreted this MRI differently.
10. Following the MRI, on March 21, 2005, plaintiff returned to Dr. Goodno and reported pain at a level of 4/5 on a scale of 1-10. Dr. Goodno assessed a resolved lumbar strain and released plaintiff to return to regular duty work the following day, March 22, 2005.
11. Defendant accepted as compensable a strain to plaintiff's lumbar spine by filing a Form 60 and paid temporary total disability in the amount of $549.28 beginning February 28, 2008. Pursuant to a Form 62, on March 2, 2005 defendants began paying temporary partial disability compensation in the amount of $370.80 to plaintiff until he returned to full duty work on March 22, 2005.
12. Upon referral by a company nurse, plaintiff presented to Dr. Edward Hines, an orthopeadic surgeon, on April 4, 2005 with complaints of severe pain over the left iliac crest and the left paralumbar area. Dr. Hines reviewed the MRI film and concluded that it showed mild posterior bulging at L3-4 and L4-5, centrally, with no apparent nerve root impingement. Dr. Hines testified that plaintiff's low back pain more likely than not was caused by his accident at work on February 9, 2005.
13. Plaintiff continued to work in his regular duty paint line position for General Electric until he was laid off in a general reduction of force on July 14, 2005. Although he was working his regular duty job prior to his layoff, he was unable to perform various duties of the job and other employees had to assist him. *Page 5 
14. Plaintiff collected at least 26 weeks of unemployment benefits throughout the remainder of 2005 and into 2006. While receiving unemployment benefits, plaintiff made the job search efforts necessary to maintain receipt of benefits.
15. In August of 2000, plaintiff was diagnosed with congestive heart failure which progressed steadily. In 2003, plaintiff had to quit his only hobby, playing softball, as a result of his severe dilated cardiomyopathy, and in August of 2005 a defibrillator was implanted.
16. Plaintiff has suffered from anxiety and depression since childhood. He periodically missed work as a result of his depression/anxiety condition and has had a history of psychiatric hospitalizations dating back to 1999.
17. On June 1, 2006, plaintiff presented to Dr. Mark Roy, a neurosurgeon at Guilford Neurosurgical Associates. Dr. Roy reviewed the March 2005 MRI film and opined that it showed a herniated nucleus pulposus at L4-5. Dr. Roy suggested that plaintiff be restudied to make sure the pathology had not resolved and recommended epidural steroid injections.
18. On June 12, 2006, plaintiff underwent a lumbar spine CT scan without contrast which showed a left foraminal protrusion at L4-5 and a left foraminal shallow protrusion at L5-S1. Dr. Roy testified that he sees between 1,000 and 1,500 MRIs of the lumbar spine every year. He had no doubt that the March 16, 2005 MRI films demonstrated that plaintiff had sustained a ruptured disc. Plaintiff underwent a series of epidural steroid injections in June, July and August of 2006, following which his pain dissipated.
19. On November 15, 2006, plaintiff returned to Dr. Roy who noted full strength and preserved reflexes upon examination. Dr. Roy further opined that plaintiff was a poor operative candidate because of his cardiac disease. *Page 6 
20. In June of 2006, plaintiff was offered a job by GKN, a local automotive parts manufacturer, but then determined he was unable to accept the job because of the presence of magnetic fields that would interfere with his heart defibrillator.
21. Aside from the job with GKN that plaintiff was unable to accept because of his cardiac condition, plaintiff failed to present evidence of reasonable efforts to find employment. Plaintiff's only other evidence of job search activity is during the 26 weeks he received unemployment benefits as required by the Employment Security Commission to receive benefits. Plaintiff has not searched for any employment since at least June 2006.
22. On September 30, 2008, plaintiff was evaluated by Dr. Frank Rowan, an orthopaedic surgeon at Guilford Orthopaedic and Sports Medicine Center, for an independent medical examination. After that appointment, Dr. Rowan reviewed the MRI film from March 16, 2005 and noted the presence of a herniation at L4-5 and described the typical course of treatment including physical therapy, anti-inflammatory medicines, cortisone injections, and possibly surgery but opined that plaintiff was not a surgical candidate because of his cardiac condition. Dr. Rowan further opined that plaintiff had reached maximum medical improvement and assigned a ten percent (10%) permanent partial impairment rating to his back.
23. Greater weight is given to the opinions of Dr. Roy and Dr. Rowan as surgeons that operate on the low back, than to the opinions of Dr. Goodno, an occupational medicine doctor, and Dr. Hines, a surgeon who does not perform low back surgery. In fact, as stated above, Dr. Hines testified that a low back surgeon would be the type of doctor best suited to offer opinions in this matter. Accordingly, based upon the medical opinions of Dr. Roy and Dr. Rowan, the undersigned finds that plaintiff suffers from a herniated disc at L4-5. *Page 7 
24. Dr. Roy opined that plaintiff's low back condition was caused by his accident at work on February 9, 2005. Likewise, Dr. Rowan opined more likely than not, the injury that occurred on the 9th of February, 2005, caused plaintiff's HNP (herniated nucleus pulposus). Accordingly, based upon the greater weight of medical evidence of record, the undersigned find that plaintiff's herniated L4-5 disc was caused by his incident at work on February 9, 2005.
25. The greater weight of the credible medical evidence of record fails to establish that plaintiff's severe, progressive cardiac condition and/or his pre-existing, severe anxiety/depression conditions are related to or were aggravated or exacerbated by his work-related back injury.
26. Plaintiff is unable to return to his job at General Electric, but he is capable of sedentary work. However, plaintiff made reasonable job searches during the time that he received unemployment benefits from 2005 into 2006. In addition, the Full Commission finds that while plaintiff is capable of some work, it would be futile for him to seek employment within his work restrictions due to his pre-existing medical conditions, work experience, lack of education, training and transferrable skills, and physical impairment.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff has shown by the greater weight of the evidence that on February 9, 2005, he sustained a compensable injury *Page 8 
which caused plaintiff's herniated L4-5 disc condition. N.C. Gen. Stat. § 97-2(6); Click v. Pilot Freight Carriers,Inc., 300 N.C. 164 (1980).
2. The greater weight of the evidence of record fails to establish that plaintiff's cardiac condition and/or his anxiety/depression conditions are related to or were aggravated or exacerbated by his work-related back injury, and therefore these conditions are not compensable. Id.
3. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may prove disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
4. Plaintiff has carried his burden to show that he remains disabled as a consequence of his compensable back injury.Id. Given his compensable back condition, sedentary work restrictions, pre-existing medical conditions, vocational experience, lack of education, training and transferrable skills, physical impairment, and depression, it would be futile for plaintiff to seek work within the physical limitations created by his back injury. Id. The Full Commission does note, however, that plaintiff would benefit from some vocational rehabilitation. *Page 9 
5. Plaintiff is entitled to ongoing temporary total disability benefits beginning July 15, 2005. N.C. Gen. Stat. § 97-29. Plaintiff is also entitled to a ten percent permanent partial disability rating. N.C. Gen. Stat. 97-31.
6. A finding that plaintiff has reached maximum medical improvement is not the equivalent of finding that the employee has pre-injury wage earning capacity. Sussos v. Wheaton Indus.,145 N.C. App. 164, 551 S.E.2d 456, disc. review denied,355 N.C. 214, 560 S.E.2d 135 (2002). Plaintiff has not yet regained his pre-employment wage earning capacity and as such is entitled to ongoing temporary total disability (TTD) at the rate of $583.23 per week from July 15, 2005 until such time as he returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. At the end of the healing period, plaintiff is entitled to receive compensation for total or partial disability under N.C. Gen. Stat. § 97-29 or § 97-30 or compensation for permanent partial disability under N.C. Gen. Stat. § 97-31, but not both. Collins v. Speedway Motorsports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004). Therefore, plaintiff may elect to receive the more favorable remedy between ongoing benefits for temporary total disability provided by N.C. Gen. Stat. § 97-29 until such time as he is capable of returning to work at his pre-injury wage or his scheduled benefit of 30 weeks of compensation to be awarded pursuant to N.C. Gen. Stat. § 97-31(23). At such time that plaintiff elects to receive permanent partial disability benefits, defendants are entitled to a credit against any permanent partial disability due for all temporary total disability benefits paid after plaintiff reached maximum medical improvement. Collins v. Speedway MotorSports Corp., 165 N.C. App. 113, 598 S.E.2d 185 (2004);Arnold v. Wal-Mart, 154 N.C. App. 482, 571 S.E.2d 888 (2002). *Page 10 
8. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his herniated disc condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment provided by Dr. Roy. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation at the rate of $583.23 per week from July 15, 2005 until such time as he returns to work or until further Order of the Commission. All accrued compensation due plaintiff shall be paid in one lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's herniated L4-5 disc condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment provided by Dr. Roy.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from any sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay expert witness fees as follows, if said fees have not previously been paid: Dr. Goodno in the amount of $1,200.00; Dr. Hines in the amount of $350.00; Dr. Rowan in the amount of $550.00; and Dr. Roy in the amount of $560.00, after consideration of both parties' positions.
5. Defendants shall pay the costs due the Commission.
This the 10th day of December 2009. *Page 11 
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER